409 A.2d 540.

THE KATES CORPORATION *vs.* JORDAN B. KIRSHENBAUM.

DECEMBER 19, 1979.

PRESENT: Bevilacqua, C.J., Kelleher, Doris and Weisberger, JJ.

WEISBERGER, J.   This is an appeal by the plaintiff from a judgment of the Superior Court in a case arising out of a dis-

pute over an alleged agreement to pay a real estate broker's commission. The plaintiff, Kates Corporation (Kates), seeks to recover a commission on the sale of real property, located at Weeden Street and Reservoir Avenue in Pawtucket, by defendant Jordan B. Kirshenbaum to third-party defendant Philip B. Smiley (Smiley). The trial justice directed a verdict for the defendant at the close of the plaintiff's case.

The facts, considered in the light most favorable to plaintiff and with all reasonable inferences extracted from the record that support plaintiff's position, are as follows. Vincent Marcello (Marcello), a real estate broker in the employ of Kates, became interested in Kirshenbaum's Weeden Street property when he saw a sales advertisement which defendant had placed in the Providence Journal. Marcello telephoned Kirshenbaum in Dallas, Texas, on September 5, 1973, to inquire whether he might represent defendant in the sale of this property and thereby obtain a commission. Kirshenbaum told Marcello he would receive a commission if he sold the property. During the conversation Marcello and Kirshenbaum reached an oral understanding that a five percent commission, which they considered standard for the sale of this type of property, would apply. Two days after this telephone conversation Marcello sent to Kirshenbaum for his signature an open listing agreement establishing the five percent commission rate. Kirshenbaum did not return the agreement with his signature, and thereafter Marcello made "modest" but not "active" efforts to market the property.

Marcello next telephoned Kirshenbaum on February 12, 1974. Marcello was still interested in the Weeden Street property and wanted some kind of agreement in writing before beginning to market the property actively. Kirshenbaum allegedly told Marcello he could actively market the property at a price of $285,000, and that if Marcello came up with an acceptable offer, he would pay him a five percent commission. Kirshenbaum asked Marcello to send him a letter confirming this discussion; Kirshenbaum said that he would acknowledge the letter and return it to Marcello. Marcello

sent such a letter on February 13, 1974, stating in part that "[a]lthough you will not give us an exclusive listing, you will pay us a 5% commission if we bring you an acceptable offer."

After February 12, 1974, Marcello began active advertising of the Weeden Street property. In a February 20, 1974 telephone conversation, Marcello asked Kirshenbaum whether he had received the February 13, 1974 letter. Kirshenbaum said he had, and that he would acknowledge and return it. There is no evidence that he ever did so. Marcello continued to make earnest efforts to market the property.

On April 18, 1974, Marcello received a telephone call from Smiley, who was to be the eventual purchaser of the property. Marcello met with Smiley on April 25, 1974, to discuss the possible sale. Marcello telephoned Kirshenbaum on April 27, 1974, and they discussed the possibility of a sale to Smiley. Kirshenbaum told Marcello that if the property sold for $265,000, Marcello would receive the full five percent commission, and that, if Marcello was willing to be flexible and the property sold for less than $265,000, Kirshenbaum and Marcello would negotiate something less than the full five percent commission. Marcello told Kirshenbaum he would accept less than five percent if the selling price was below $265,000.

On May 1, 1974, defendant began to enter his own advertising in the Providence Journal for the sale of the Weeden Street property. Smiley told Marcello on May 1 that he had seen one of Kirshenbaum's own advertisements for the property. On May 2, Marcello, by both telephone and letter, communicated to Kirshenbaum his fear that Smiley and defendant would make a deal without him.

On May 8, 1974, Kirshenbaum sent Marcello a letter which is the only writing in this case signed by defendant:

"Dear Vincent:

"This letter will answer the last few letters that I re-

ceived from you as well as several phone calls from you relative to various properties.

"[discussion of two other properties].

"As far as the Weeden Street property is concerned, you will recall that when I first spoke to you I gave you my opinion which was that since the greater Providence area is such a small market you would probably receive calls from the same people relative to making a purchase who had called me in the past when I advertised. I further explained to you that this was the reason I would not be willing to give you an exclusive on the property. You have made an attempt to come up with a buyer in the last three months but to no avail, with the exception of one unacceptable offer from an Allen E. Lewis.

"I notified you about two weeks ago that I would begin advertising the property myself as I felt I had given you ample time to come up with a buyer. I questioned you then whether or not you had any other 'concrete' buyers and you had none.

"If due to my present advertising in the Providence Journal, I am able to get a buyer, even though he might have been someone who called you relative to the property in the past, I do not feel that I would have any obligation to you. If you do not agree, please notify me.

"* * *."

Kirshenbaum sold the property to Smiley in May of 1974 at a price of $256,000 and refused to pay Marcello any commission. Kirshenbaum explained to Marcello than no commission was owing, since Smiley had contacted Kirshenbaum a year and a half earlier, and since defendant did not feel that Marcello's efforts in bringing the buyer and seller together were significant to the consummation of the sale. This suit followed.

After plaintiff had concluded its case, the trial justice

granted defendant's motion for a directed verdict[1] on the ground that there was no note or memorandum of the alleged agreement sufficient to satisfy the Rhode Island Statute of Frauds. The statute, G.L. 1956 (1969 Reenactment) §9-1-4, provides in pertinent part:

> "No action shall be brought:

> "* * *

> "*Sixth.* Whereby to charge any person upon any agreement or promise to pay any commission for or upon the sale of any interest in real estate.

> "Unless the promise or agreement upon which such action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him thereunto lawfully authorized."

This appeal ensued.[2]

---

[1]During the course of his cross-examination of Marcello, counsel for the defendant introduced in evidence a letter sent by Marcello to defendant. Later when defendant moved for a directed verdict at the close of plaintiff's case, plaintiff did not raise the point that defendant had already begun to present evidence. At no point has plaintiff argued that the motion for a directed verdict was untimely on account of the prior admission of a defendant's exhibit. In view of plaintiff's failure to raise the issue of defendant's moving for a directed verdict after presenting evidence, we do not address the question of whether on this account the motion was improperly made.

[2]The defendant moved before trial to add as an additional party Commercial Properties, Inc., which appeared to be a subsidiary of Kates. The motion was granted. Commercial filed an answer claiming an interest identical to that of Kates. The evidence adduced at trial was that Commercial was an agent for Kates. The eventual final order was entered only against Kates, not against Commercial. Only Kates has appealed the order.

> In the absence of a special determination, an order of the Superior Court "which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties * * *." Super. R. Civ. P. 54(b). An order insufficient to terminate an action by reason of Rule 54(b) is not appealable to this court. *Goodyear Loan Co. v. Little,* 107 R.I. 629, 630, 269 A.2d 542-43 (1970). Here, however, the interest of Commercial Properties in the litigation is identical to that of Kates for all practical purposes, and the final order in favor of defendant and against Kates precludes any recovery by Commercial. The order of the trial court is therefore sufficient to adjudicate the rights and liabilities of all the parties, and so Rule 54(b) does not bar this court from considering the present appeal.

This court had occasion to construe the sixth subsection of §9-1-4 in *Peacock Realty Co. v. E. Thomas Crandall Farm, Inc.*, 108 R.I. 593, 278 A.2d 405 (1971). We stated there that a memorandum of an agreement to pay a real estate agent's or broker's commission is inadequate to satisfy the statute if it fails to state the amount of the compensation or the commission to be paid to the agent or broker. *Id.* at 598-99, 278 A.2d at 407-08. We stressed that our general policy frowns on anything short of complete compliance with the statute by a real estate broker. *Id.* at 602, 278 A.2d at 410. Although, as was shown in the *Peacock* case, the deficiencies of a broker's memorandum may be cured by the defendant's own admissions on the witness stand, no such admissions were made by defendant here. The plaintiff's case against Kirshenbaum must depend on the signed writings of Kirshenbaum; and the only writing he signed, the letter of May 8, 1974, although referring to prior correspondence between Marcello and Kirshenbaum, contains no reference to an amount of compensation or rate of commission. Indeed, this letter tends to negate the existence of any integrated agreement between the parties.

The plaintiff argues, however, that Marcello's letter to Kirshenbaum dated February 13, 1974, supplies this missing essential term, and that this letter ought to be read into Kirshenbaum's signed letter of May 8 by virtue of Kirshenbaum's statement, "This letter will answer the last few letters that I received from you as well as several phone calls from you relative to various properties."[3] In *Cunha v. Callery*, 29 R.I. 230, 231-32, 69 A. 1001, 1001 (1908), this court adopted the rule that unsigned writings referred to in a

---

[3]Although in reviewing a directed verdict for defendant, this court considers the evidence in the light most favorable to plaintiff, *Calhoun v. City of Providence,* 120 R.I. 619, 633, 390 A.2d 350, 357 (1978), the court must treat the sufficiency of defendant's letter to satisfy §9-1-4 as a question of law rather that a question of fact. *See Joseph E. Seagram & Sons, Inc. v. Shaffer,* 310 F.2d 668, 675 (10th Cir. 1962), *cert. denied,* 373 U.S. 948, 83 S. Ct. 1678, 10 L. Ed. 2d 704 (1963) (applying Oklahoma law); *L.J. Upton & Co. v. Colbath,* 122 Me. 188, 196-98, 119 A. 384, 388 (1923); *Johnson v. Auran,* 214 N.W.2d 641, 651-52 (N.D. 1974). Therefore, the directed verdict standard is not relevant to this issue.

signed writing may be read together with the signed writing to satisfy the requirements of the Rhode Island Statute of Frauds. The reason for the rule is that a signed reference to a document may vouch for the terms of that document to the same extent as a signature directly on the document's fact. It is necessary, however, that the signed writing recognize, at least implicitly, that the terms of the agreement are correctly stated in the unsigned writing. *Scheck* v. *Francis,* 33 App. Div. 2d 91, 94, 305 N.Y.S.2d 217, 221 (1969); *Thirkell* v. *Cambi,* [1919] 2 K.B. 590, 595, 597; 1 Williston, *The Law Governing Sales of Goods* §108 at 315 (rev. ed. 1948). *See Grant* v. *Auvil,* 39 Wash, 2d 722, 726, 238 P.2d 393, 396 (1951). In no way can it be said in the present case that Kirshenbaum has assented by his May 8 letter to the statements and terms written by Marcello in his February 13 letter.[4]

Recently the United States Court of Appeals for the First Circuit "confess[ed] to being troubled by the thought that recipients of * * * letters, should they decide not to respond, do so at the peril of finding themselves bound by a solemn obligation within the Statute of Frauds." *Centredale Investment Co.* v. *Prudential Insurance Co. of America,* 540 F.2d 16, 19 (1st Cir. 1976) (construing §9-1-4). We are just as troubled by the notion that such recipients, merely by deigning to "answer the last few letters [and] phone calls," thereby acquiesce in every essential term contained in those letters. As far as the compensation or rate of commission due Marcello is concerned, Kirshenbaum has signed nothing manifesting his acceptance of Marcello's version of the agreement on this point. Kirshenbaum's memorandum fails either to state or to adopt from another writing the commission rate to be paid to

---

[4]The plaintiff asks us to incorporate into Kirshenbaum's letter an unsigned writing that the plaintiff himself drafted. Several courts have expressed unwillingness to read material written by the plaintiff into the signed memorandum of the defendant, in the absence of intrinsic assurances that the defendant meant to adopt the terms of the plaintiff's writing. *E.g., Young* v. *McQuerrey,* 54 Haw. 433, 437, 508 P.2d 1051, 1054 (1973); *Brause* v. *Goldman,* 10 App. Div. 2d 328, 335, 199 N.Y.S.2d 606, 614 (1960); *Solin Lee Chu* v. *Ling Sun Chu,* 9 App. Div. 2d 888, 888-89, 193 N.Y.S.2d 859, 860 (1959)

the plaintiff. It is therefore inadequate to satisfy §9-1-4. *Peacock Realty Co. v. E. Thomas Crandall Farm, Inc.*, 108 R.I. at 598-99, 278 A.2d at 407-08. We decline to relax the rule that, in the absence of such special circumstances as judicial admissions, the compliance of a real estate broker with the statute of frauds must be complete.

The plaintiff's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers in the case are remanded to the Superior Court.

*Hinckley, Allen, Salisbury & Parsons, Michael P. DeFanti, Gordon P. Cleary,* for plaintiff.

*Kirshenbaum Law Offices, Inc., Sanford M. Kirshenbaum,* for defendant.