Jacalynn DEMERS

v.

Walter L. DEMERS

v.

Richard A. SCOTT and J.W. Riker
Realtors, Inc. et al.

No. 88–57–A.

Supreme Court of Rhode Island.

April 11, 1989.

Joseph E. Marran, Jr., Joseph E. Marran,
Jr. Ltd., Pawtucket, Nicholas L. Colangelo,
Providence, for plaintiff.

Edward E. Dillon, Slatersville, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on the appeal
of Richard A. Scott and J.W. Riker Realtors, Inc. (third-party defendants), from a
Family Court judgment which declared that
the third-party defendants were not entitled to a real estate commission and ordered that they pay the amount of the
commission withheld ($8,600) together with
interest to Joseph E. Marran, Esquire and
Nicholas L. Colangelo, Esquire (co-commissioners). We reverse. The facts in the
case insofar as pertinent to this appeal are
as follows.

This action between the co-commissioners and the third-party defendants (who
shall at times be collectively referred to as
Scott)[1] arose out of a divorce action pursu-

---

1. At all times pertinent hereto Scott was a real
estate broker employed by J.W. Riker Realtors, Inc.

ant to which the marital domicile of the parties was ordered to be sold by an order of a justice of the Family Court entered on November 22, 1985, which read in part as follows:

"14. The marital domicile located at 1 Valjean Road, Greenville, Rhode Island shall be placed on the market for sale forthwith. Joseph E. Marran, Esquire and Nicholas Colangelo, Esquire are appointed cocommissioners of the said real estate for the purpose of sale. Both parties shall execute any listing or sales agreements necessary to list the property. All proceeds from the sale of the marital domicile shall be placed in escrow until further order of this court."

It appears to be undisputed from the evidence elicited in the course of a hearing that Scott was engaged by Mr. and Mrs. Walter L. Demers to sell the property by a written listing agreement which had expired prior to the appointment of the co-commissioners. After the co-commissioners were appointed, Mrs. Demers again contacted Scott and re-listed the property with J.W. Riker Realtors, Inc. This was recorded by a written instrument signed by Mrs. Demers on January 4, 1986. The listing agreement was forwarded to Mr. Colangelo but was not signed by either co-commissioner. Thereafter, Scott obtained an offer from Donald A. and Patricia L. Pease to purchase the real estate for the sum of $215,000. This offer was transmitted to Mr. Colangelo.

At about this same time a notice of foreclosure of the subject real estate was received from People's Bank, the mortgagee. This notice prompted Mr. Colangelo to contact Scott in order to arrange for a sale of the property and thereby forestall the foreclosure. As a result of this discussion Mr. Colangelo prepared a motion to be presented to the Family Court, setting forth the number of times the property had been shown and sought permission of the court to accept the offer presented through Scott

for the sum of $215,000 for sale of the real estate. The motion for instructions was signed by Nicholas L. Colangelo on behalf of both co-commissioners and read as follows:

"Now comes Nicholas L. Colangelo and Joseph E. Marran, Jr. in their capacity as co-commissioners for the sale of the marital domicle [sic] in the above entitled matter and moves this Honorable Court to review the instant matter and issue such orders as are necessary and proper. In support of this Motion, movants state the following:

1. That pursuant to Rule 66 A of the Rules of Procedure of Domesic [sic] Relations, Nicholas L. Colangelo and Joseph E. Marran, Jr. were appointed co-commissioners of the marital domicile [sic] located at 1 Valjean Road, Greenville, Rhode Island for the purpose of sale.

2. That listings and/or sales agreements necessary to list the said marital domicile [sic] were executed with J.W. Riker Realtors in Greenville, Rhode Island.

3. That said marital domicle [sic] is currently listed for sale in the amount of Two Hundred Twenty Five Thousand ($225,000.00) Dollars.

4. That your co-commissioners have received two offers since the said marital domicile [sic] was listed with J.W. Riker Realtors. The offers are as follows:

a) On February 24, 1986 from a Mr. Richard Zelano, we received an offer in the amount of One Hundred Eighty Thousand ($180,000.00) Dollars.

b) On March 3, 1986 Donald A. Pease and wife, Patricia L. Pease submitted an offer in the amount of Two Hundred Fifteen Thousand ($215,000.00) Dollars.

5. The said marital domicile [sic] has been shown the following times since being placed on the market with said Realtor.

| Date | Agency |
| --- | --- |
| January 29, 1986 | J.W. Riker |
| February 6, 1986 | J.W. Riker |
| February 8, 1986 | J.W. Riker |

| Date | Agency |
|---|---|
| February 10, 1986 | Penta Realtors |
| February 19, 1986 | J.W. Riker |
| February 22, 1986 | Large & White |
| February 22, 1986 | Ed Pariseau Agency |
| February 22, 1986 | Century 21/Sambra Agency |
| February 23, 1986 | Ed Pariseau Agency |
| February 23, 1986 | J.W. Riker |

6. That your co-commissioners are in full accord with the Plaintiff and Defendant's inclination to accept the Pease's offer in the amount of Two Hundred Fifteen Thousand ($215,000.00) Dollars. That Donald A. Pease and Patricia L. Pease are prepared to deposit Ten Thousand Seven Hundred Fifty ($10,750.00) Dollars towards the purchase of said marital domicle [sic] for the sale price of Two Hundred Fifteen Thousand ($215,000.00) Dollars.

WHEREFORE, movants pray this Honorable Court issue such orders and instructions so as to expedite the sale of said marital domicle [sic].

s/Nicholas L. Colangelo
NICHOLAS L. COLANGELO, ESQ.-351-7807
3 DAVOL SQUARE BOX 68
PROVIDENCE, RI   02903

"NOTICE TO: Joseph E. Marran, Jr.          Walter L. Demers
255 Main Street                                        33 Barnes Street
Pawtucket, RI   02860                              Greenville, RI

Rogeriee Thompson
94 Gallatin Street
Providence, RI

NOTICE

Please take Notice that this matter will be called for for [sic] Hearing on April 11, 1986 as it is already scheduled for Hearing on that date.

s/Nicholas L. Colangelo"

There seems to be no question from the evidence that Scott had procured the offer from Mr. and Mrs. Pease.

After a justice of the Family Court had granted permission to proceed with the sale, Mr. Colangelo later testified in the case at bar:

"After conferring with Mr. Marran and filing the instant motion for instruction to seek approval of the court, when it was agreed between Mr. Marran and myself that the $215,000 was acceptable, that is to say the court has in fact approved of it, * * * I signed the agreement so that in fact the offer through the Riker Realty with the Peases would go through."

The sales agreement signed by Mr. Colangelo which was introduced into evidence before the trial justice provided among other things that a commission would be paid to J.W. Riker Realtors. There seems to be no dispute that this commission had previously been agreed to be at the rate of 4 percent of the purchase price (or $8,600). The precise amount of the commission was not stated in the sales agreement, but the evidence as to this amount is uncontradicted.

The sales agreement was signed by Donald A. and Patricia L. Pease as buyers and Jacalynn Demers and Nicholas Colangelo as sellers. It also recited that Joseph E. Marran was a co-commissioner and described him as a party. However, Mr. Marran did not sign the document.

After the agreement had been signed, Mr. Marran called Scott and told him that he would either divide his commission with the co-commissioners or the question of the lack of Marran's signature on the purchase and sale agreement would be raised. Mr. Marran in the course of his examination of Scott when confronted with testimony con-

cerning this exchange stated: "No, I didn't. I said it the other way. You take half the commission, or you wouldn't get any." This statement was made by Mr. Marran in open court, though not under oath.

Scott refused to divide his commission with the co-commissioners and was summarily ordered by Mr. Marran not to attend the closing. Nevertheless, Scott did attend the closing and brought certain documents (a smoke-detector certificate and a check for the excess deposit held by J.W. Riker Realtors over and above the claimed commission). The buyers had made a deposit of $10,750 for the purchase of this real estate. Scott had deposited this sum in his agency account pending the closing. Mr. Marran ordered Scott to leave, but Scott refused to leave saying "due to the tenseness of the situation," he would remain to represent the buyers. In fact, Scott had never received any compensation from the buyers and testified that he performed no services for the buyers which were inconsistent with his duty to the sellers. This latter testimony was uncontradicted at trial. We attach no significance to Scott's statement at the closing. It was merely indicative of the fact that he was determined to remain at the closing as he had every right to do.

Scott had prepared a request for admissions pursuant to Rule 36(a) of the Rules of Procedure for Domestic Relations. This rule is identical to its counterpart, Rule 36(a) of the Superior Court Rules of Civil Procedure. The rule reads in pertinent part as follows:

"After commencement of an action a party may serve upon any other party a written request for the admission by the latter of the genuineness of any relevant documents described in and exhibited with the request or of the truth of any relevant matters of fact set forth in the request. * * * Each of the matters of which an admission is requested shall be deemed admitted unless, within a period designated in the request, not less than ten (10) days after the service thereof * * * the party to whom the request is directed serves upon the party requesting the admission either (1) a sworn statement denying specifically the matters of which an admission is requested or setting forth in detail the reasons why he or she cannot truthfully admit or deny those matters * * *."

The request for admission and the responses to said request are set forth as appendix 1 to this opinion. It should be noted that in response to a request that the sales agreement and deposit receipt be admitted to be genuine, the co-commissioners stated that they were without knowledge or information sufficient to form a belief as to the truth of that allegation. Further, they stated that they were without knowledge or information sufficient to form a belief as to the truth of the allegations that the sales agreement was signed by Donald A. and Patricia L. Pease and Jacalynn Demers and Nicholas L. Colangelo. They further said that they were without knowledge or information sufficient to form a belief as to the truth of the statement that the sales agreement attached was the agreement upon which the transaction was closed on May 12, 1986. They replied in similar fashion to the truth of the statement that the listings and/or sales agreements necessary to list said marital domicile were executed with said J.W. Riker Realtors in Greenville, Rhode Island, and that they had represented to the court that the subject marital domicile had been listed for sale with J.W. Riker Realtors in the amount of $225,000.

These replies are illustrative of the reasons for the inescapable conclusion that no effort was made on the part of the co-commissioners to respond candidly or truthfully to the requests for admission. These responses were blatantly evasive and could not have been set forth in good faith, since every one of the foregoing requests for admissions was based upon facts within the personal knowledge of the co-commissioners. We note in passing that when Mr. Colangelo signed the response to request for admissions he was not under oath as required by Rule 36(a). Mr. Marran did not sign the response at all although his name was typed on the bottom of the response in his capacity as a co-commission-

er. Testimony in the case indicated that Mr. Marran had prepared the responses, although he did not sign them.

The trial justice determined that an attorney was not required to sign a response to a request for admission. In so holding he relied upon Rule 11, which states that an attorney in signing a pleading certifies that there is "good ground to support it." Although the trial justice was correct in his interpretation of Rule 11, he did not apply the unequivocal requirement of Rule 36. The response to a request for admission is not merely a pleading. We have stated in *Cardi Corp. v. State*, 524 A.2d 1092, 1095 (R.I.1987), the purpose of Rule 36:

"It is important that we reflect for a moment on the purpose of the rule that allows the request for admissions. Rule 36 establishes a 'procedure * * * for facilitating the proof at the trial by weeding out facts and items of proof over which there is no dispute, but which are often difficult and expensive to prove.' * * * If the rule is to fulfill this undisputed function, the admissions provided by the rule must be considered as binding. Otherwise, a party securing an admission could not rely upon its binding effect and thereby safely avoid the expense of preparing to prove the very matter on which he has obtained the admission. The purpose of the rule is thereby defeated."

■ In the instant case, the co-commissioners were parties litigant pursuant to a third-party complaint brought by them. The mere fact that they were members of the bar did not in any way absolve them from compliance with the specific terms of Rule 36(a). The requirement of a sworn response to a request for admission is not subject to exception to responses filed by attorneys. The requirement of a sworn statement is necessary so that the individual who files the response is mindful that he must set forth any denial or inability to answer fully based upon facts within his personal knowledge. In this case the co-commissioners were in a position to respond candidly and completely, because all of the requests were within their personal

knowledge or within their ability readily to ascertain. It should be noted that Rule 36(a) also provides:

"If a request is refused because of lack of information or knowledge upon the part of the party to whom the request is directed, the party shall also show in his or her sworn statement that the means of securing the information or knowledge are not reasonably within the party's power."

We are constrained to observe that the type of answer given on behalf of the co-commissioners in this case would completely subvert and set at naught the purpose of this rule. Not only was the answer unsworn, but if it had been given under oath, it would have nevertheless been in complete violation of the rule and indicative of bad faith in refusing to admit those facts that were clearly not in dispute. The only proper judicial reaction to this response would be the application of the sanction contained in the rule itself. Since the response did not meet the requirements of the rule all of the requests must be deemed to be admitted. The trial justice erred in declining to impose this sanction.

Based upon these admissions and an affidavit filed by Scott, a motion was made for summary judgment on behalf of Scott. This motion was opposed by a complaint filed by the co-commissioners. The allegations in the complaint were verified by an affidavit signed by Mr. Marran. This affidavit, caused the trial justice to deny the motion for summary judgment and to proceed to try the dispute on the merits. We are of the opinion that the trial justice was correct in denying the motion for summary judgment by reason of the affidavit filed even if the requests under Rule 36 were deemed to be admitted. However, we are of the opinion that the material assertions set forth in the affidavit and complaint were not supported by the evidence adduced at the trial.

■ There seems no question upon our review of the record in this case that Mr. Colangelo was authorized by his co-commissioner, Mr. Marran, to sign the contract for the sale of the real estate. This contract

became the effective document upon which the sale was implemented and proceeds received in accordance with the terms thereof. The contract of sale provided for payment of a commission. This was more than adequate to meet the requirements of the Statute of Frauds, G.L.1956 (1985 Reenactment) § 9-1-4(6), which states in part:

"No action shall be brought:

\* \* \* \* \* \*

(6) Whereby to charge any person upon any agreement or promise to pay any commission for or upon the sale of any interest in real estate, unless the promise or agreement upon which such action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him thereunto lawfully authorized."

From the uncontradicted evidence in this case, we must conclude that Mr. Colangelo signed the sales agreement with the full knowledge and consent of his co-commissioner and that his signature upon the sales agreement met the requirements of the statute.

█ Taking into account the uncontradicted and unequivocal testimony of Mr. Colangelo at trial together with the admissions obtained pursuant to Rule 36(a) and the representations made by the co-commissioners to the court in their motion for instructions, the evidence overwhelmingly establishes beyond a reasonable doubt that the co-commissioners ratified and accepted a listing agreement executed by Mrs. Demers on January 4, 1986. The evidence also establishes that they accepted the services of Scott pursuant to the listing agreement, that they represented to the court that Scott had obtained an offer from a ready, able and willing purchaser in the amount of $215,000. This evidence and the cross-references to the various undisputed documents met the requirements laid down by this court in *Peacock Realty Co. v. E. Thomas Crandall Farm, Inc.*, 108 R.I. 593, 278 A.2d 405 (1971), and even the strict requirements enunciated in *Kates Corp. v. Kirshenbaum*, 122 R.I. 486, 409 A.2d 540 (1979). As a result of the barrage of irrelevancies set forth by the co-commissioners during the trial of the third-party complaint, the trial justice overlooked the linkage of proof between the uncontradicted documentary evidence and the candid testimony of Mr. Colangelo.

█ As a consequence, Scott was entitled to the commission which had been previously agreed upon in the amount of 4 percent of the purchase price or $8,600. Mr. Marran's attempt to require Scott to divide his commission with the co-commissioners was completely unjustified either in law or in fact. Consequently, Scott did not act wrongfully in declining to deposit this amount with the escrow agent and was entitled to retain the same as a commission for producing a ready, able and willing purchaser. See *Rustigian v. Celona*, 478 A.2d 187 (R.I.1984); *Judd Realty, Inc. v. Tedesco*, 400 A.2d 952 (R.I.1979).

For the reasons stated, Scott's appeal is sustained. The judgment of the Family Court is reversed, and the papers in the case may be remanded to the Family Court for entry of judgment in favor of the third-party defendants.

FAY, C.J., did not participate.

## APPENDIX 1

PROVIDENCE, SC.

JACALYNN DEMERS

VS.

WALTER L. DEMERS

VS.

RICHARD A. SCOTT, EDWIN COUNTS, J.W. RIKER REALTORS and PEOPLES BANK

C.A. NO. 85-3375

REQUEST FOR ADMISSIONS

Now comes Defendant, J.W. RIKER REALTORS, who requests Co-Commissioners, Joseph E. Marran, Esquire and Nicholas Colangelo, Esquire, to make the following admissions within twenty (20) days of the date hereof, for the purpose of this action only and subject to all pertinent objections

to admissibility which may be interposed at the trial:

1. That each of the following documents exhibited with this request is genuine:

A. Sales Agreement and Deposit Receipt dated March 7, 1986, and attached hereto as Exhibit A.

2. That each of the following statements is true:

A. That Exhibit A attached hereto is signed by Donald A. Pease, Patricia L. Pease, Jacalynn F. Demers and Nicholas L. Colangelo, Esquire, Co–Commissioner.

B. That Exhibit A is the Sales Agreement and Deposit Receipt upon which this transaction was closed on May 12, 1986.

C. That you have represented to the Court in this action that the listings and/or sales agreements necessary to list said marital domicile were executed with J.W. Riker Realtors in Greenville, Rhode Island.

D. That you have represented to the Court in this action that the subject marital domicile is currently listed for sale with J.W. Riker Realtors in the amount of $225,-000.00.

E. That you were ordered by the Court in this action to execute any listing or sales agreements necessary to list the property.

F. That you have no knowledge of any evidence which would purport to show that J.W. Riker Realtors, its agents, etc., received any financial remuneration from the buyers, Donald A. Pease and Patricia L. Pease, concerning the sale of the subject marital domicile.

G. That you have no knowledge of any evidence which would purport to show that J.W. Riker Realtors, its agents, etc., performed any services for the said buyers not consistent with the best interests of the sellers of the subject marital domicile.

H. That on April 14, 1986, you assured Richard A. Scott that the brokers' commission to J.W. Riker Realtors, per Exhibit A, would not be held in escrow at the subject closing.

> J.W. Riker Realtors,
> By Their Attorney,
> /s/Edward E. Dillon, Jr.
> Edward E. Dillon, Jr.
> PO Box 769
> 747 Victory Highway
> Slatersville, Rhode Island 02876

DATED: MAY 13, 1987

## CERTIFICATION

I hereby certify that I mailed a true copy of the within Request for Admissions to Joseph E. Marran, Jr., Esquire, 255 Main Street, PO Box 1383, Pawtucket, Rhode Island 02860, Nicholas L. Colangelo, Esquire, 3 Davol Square, Box 68, Providence, Rhode Island 02903, Mr. Walter L. Demers, 12 Whitman Street, Esmond, Rhode Island 02828, and William F. Hague, Jr., Esquire, 2020 Hospital Trust Tower, Providence, Rhode Island 02903 on the 13th day of May, 1987.

> /s/ Edward E. Dillon, Jr.
> Edward E. Dillon, Jr.

## EXHIBIT A

### SALES AGREEMENT AND DEPOSIT RECEIPT
#### Rhode Island Association of Realtors - Standard Form

AGREEMENT made this _____ 7th _____ day of _____ March _____ 19 86

between Jacalyn F. Demers and Nicholas L. ColangeloJoseph E. Harrow as co-_____ referred to below as Seller

of _____ Smithfield, RI _____

and _____ Donald A. and Patricia L. Pease _____ referred to below as the Buyer

of _____ Smithfield, RI _____

The Seller agrees to SELL and the Buyer to BUY, upon the terms below, that certain real estate located at _____ 1 Val Jean Road _____

Assessor's Plat _____ 44E _____ Lot 25424

In the city/town of _____ State of _____

**Fixtures:** Included in this sale as part of the premises are the buildings, structures and improvements now thereon, and the fixtures belonging to the Seller and used in connection therewith including, if any, all venetian blinds, window shades, screens, screen doors, storm windows and doors, awnings, shutters, electric and other lighting fixtures, outside television antennas, rotor and control, fences, gates, trees, shrubs and plants in the yard, and # built in, air-conditioning equipment,garbage disposers and dishwasher. (Any item deleted from this paragraph is not included in the sale.) The following fixtures which are owned by the Seller are not included in the sale:_____

**Title:** The premises are to be conveyed by a good and sufficient _____ warranty _____ Deed of the Seller, conveying a good, clear and marketable title to the premises free from all encumbrances, except restrictions of records and municipal regulations, if any.

**Possession:** Full possession of the premises free of all tenants, occupants, and personal possessions is to be delivered to the Buyer at the time of delivery of the deed, the premises to be then in the same condition in which they now are, reasonable use and wear of the buildings thereon excepted. The Buyer shall be entitled to a re-inspection of the premises prior to the delivery of the deed in order to determine whether the condition of the premises complies with the terms of this paragraph.

**Purchase Price:** For such deed and conveyance, the Buyer is to pay the Seller the sum of _____ $215,000.00 dollars of which _____ $10,750.00 _____ dollars, hereinafter called the deposit, has been paid this day and shall be held in trust by the Seller's Broker, and the remainder, _____ $204,250.00 _____ dollars is to be paid upon the delivery of the deed.

**Time for Performance:** The deed is to be delivered and the consideration paid on _____ 5/2 _____ 19 86, at _____ 2 _____ o'clock _P_. _A.m._, at the Registry of Deeds in which the deed should by law be recorded, unless full performance of these obligations shall have taken place prior to that time.

**Payment:** At the time of delivery of the deed, personal checks without certification will not be accepted in payment of the purchase price, but, if for any reason the Seller shall refuse the tender of a certified check or the check of a bank, the Buyer shall be allowed a reasonable time in which to make tender in cash.

**Use of Purchase Money to Clear Title:** To enable the Seller to make conveyance as provided in this Agreement, the Seller may, at the time of the delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interests, provided that all instruments so obtained are recorded simultaneously with the delivery of the deed.

**Adjustments:** Rents, fuels, water charges, and sewerage use charges shall be apportioned as of the date of the delivery of the deed.

**Taxes:** Real Estate taxes and Fire District taxes assessed as of December 31, 19 85..., are to be prorated on a (calendar/municipal fiscal) year basis; the Seller paying pro rata for the period from the beginning of the agreed upon adjustment year to the date of delivery of the deed and Buyer paying or assuming the balance of these taxes. All other taxes which are a lien upon the premises shall be paid by the Seller at the time of the delivery of the deed.

**Assessments:** Any assessments constituting a lien on the premises which are payable over a period of more than one year shall be apportioned in such manner that Seller shall pay installments due during the (calendar/municipal fiscal) years prior to the year in which the deed is delivered; the installment due in that year shall be apportioned in the same manner as above provided for taxes and Buyer shall pay or assume the balance.

**Insurance:** Seller shall keep the premises insured, at his expense, until the delivery of the deed, against loss by fire with Extended Coverage provisions in the sum of _____ as is at present _____ dollars, and, in case of any loss, to pay over or assign to the Buyer upon payment of the remainder of the purchase price all sums recovered or recoverable on account of said insurance, or the Buyer may, at his option, terminate this Agreement and the deposit paid to the Seller shall be refunded to the Buyer, unless the Seller shall have restored the premises to their former condition.

**Mortgage Contingency:** It is expressly agreed notwithstanding any other provisions of this Agreement, that this Agreement is subject to the Buyer's ability to obtain a _____ conventional _____ mortgage commitment with an institutional first mortgage lender of at least $150,000.00 _____ for a minimum period of XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX and XXXXXXXX XXXXpoint. The Buyer agrees to apply for the mortgage forthwith. In the event, after reasonable effort has been made by Buyer, the Buyer is unable to obtain a commitment for the mortgage loan, the Buyer shall so advise the Seller or Seller's Broker, in writing, on or before _____ 4/4 _____ 19 86 and this Agreement shall become null and void and all payments made hereunder shall be refunded. If such written notice is not received by the Seller or Seller's Broker within the time specified the Buyer shall be bound to perform his obligations under this contract.

**Seller's Inability:** If the Seller shall be unable to give title and to make conveyance as per _____ for above, all payments made by the Buyer under this Agreement shall be refunded, and all obligations of either party hereto shall cease; provided, _____ that the Buyer at his option may waive any defects and take such title as the Seller is able to convey, without warranty as to those defects and without _____ tion of the purchase price, and the acceptance of a deed and possession by the Buyer shall be deemed a full performance and discharge hereof.

**Buyer's Default:** Upon default by the Buyer, the Seller shall have the right to retain the deposit _____ right to be without prejudice to the right of the Seller to require specific performance or the payment of other or further damages, or to pursue any rem... _____ gal or equitable, which shall accrue by reason of such default.

**Broker's Fee:** It is understood that a previously agreed upon broker's fee is to be paid to _____ J. W. RIKER REALTORS _____ (sometimes referred to in this Agreem... _____ s the Seller's Broker) by the Seller.

**Wetlands Disclosure Pursuant to R. I. G. L. Section 2-21-28:** All or part of the premi... _has been previously determined by the Rhode Island Department of Environmental Management to be a coastal wetland, bay, fresh water wetland, lake, marsh, river bank, or swamp, as these terms are defined in Chapter 1 of Title 2 of the Rhode Island General Laws.

**Construction of Agreement:** This Agreement has been executed in one or more counterparts and each shall be deemed to be an original, and shall be binding upon and ensure to the benefit of the heirs, administrators, executors, successors, and assigns of the respective parties hereto. If two or more persons are named herein as Seller or Buyer,their obligations hereunder shall be joint and several.

**Additional Provisions:** 1. Subject to termite and wood boring inspection addendum attached. 2. Subject to structural inspection addendum attached. 3. Dishwasher, stove, and refrigerator all to remain.

**Initialed Riders:** The initialed riders,if any, attached hereto, are made a part of this agreement.

**Entire Agreement:** We, the parties hereto, each declare that this instrument contains the entire agreement between the parties, and that it is subject to no understandings, conditions or representations other than those expressly stated herein.

WITNESS my signatures of the above parties on the date first written above.

_____ Buyer   _____ Jacalyn F. Demers _____ Seller

FAMILY COURT

STATE OF RHODE ISLAND

PROVIDENCE, SC.

JACALYNN DEMERS

VS

WALTER L. DEMERS

VS

RICHARD A. SCOTT, EDWIN COUNTS, J.W. RIKER REALTORS and PEOPLES BANK

C.A. NO.: 85–3375

CO–COMMISSIONERS RESPONSE TO DEFENDANT, J.W. RIKER REALTORS, REQUEST FOR ADMISSIONS

Now come the co-commissioners, Joseph E. Marran, Esq. and Nicholas L. Colangelo, Esq., in the above-entitled matter and make the following admissions:

1. Co-commissioners are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 1 A of the defendant, J.W. Riker Realtors, Request for Admissions.

2. The co-commissioners are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 2 A; 2B; 2C and 2D of the defendant, J.W. Riker Realtors, Request for Admissions.

3. That the co-commissioner admit the allegations of Paragraph 2 E of the defendant's Request for Admissions.

4. That the co-commissioners specifically deny the allegations that they have no knowledge of any evidence which would purport to show that J.W. Riker Realtors, its agents, etc., received any financial renumeration from the buyers, Donald A. Pease and Patricia L. Pease, concerning the sale of the subject marital domicile set forth in Paragraph 2 F of the defendant's Request for Admissions.

5. That the co-commissioners specifically deny the allegations of Paragraph 2 G of the defendant's Request for Admissions.

6. That the co-commissioners specifically deny the allegations of Paragraph 2 H of the defendant's Request for Admissions.

CO–COMMISSIONERS
JOSEPH E. MARRAN, JR., ESQ.
/s/Nicholas L. Colangelo
NICHOLAS L. COLANGELO, ESQ.

DATED: MAY 30, 1987

CERTIFICATION

I hereby certify that I mailed a true copy of the within Admissions to: Edward E. Dillon, Jr., Esq. P.O. Box 769, 747 Victory Highway, Slatersville, RI 02876 and William F. Hague, Jr., Esq., 2020 Hospital Trust Tower, Providence, RI 02903 on the 29th day of May, 1987; and Walter L. Demers, Pro–Se, 12 Whitman Street, Esmond, RI.

/s/Lois Fogarty